UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| LOOKOUT MOUNTAIN SUITES, LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 1:18-CV-311 |
| | ) | |
| v. | ) | Judge Collier |
| | ) | |
| KENDON MASSENGALE, ARYIEL | ) | Magistrate Judge Lee |
| NOVAK, JAMAAL NOBLE, and | ) | |
| CITY OF CHATTANOOGA, TENNESSEE, | ) | |
| | ) | |
| *Defendants*. | ) | |

## M E M O R A N D U M

Before the Court are two motions for summary judgment, one by Defendant City of
Chattanooga, Tennessee (the "City") (Doc. 140), and one by Defendants Sergeant Kendon
Massengale, Officer Aryiel Novak, and Investigator Jamaal Noble (collectively, the "Officers")
(Doc. 206). Plaintiff Lookout Mountain Suites, LLC, has filed responses (Docs. 234, 235), and
the City and the Officers have replied (Docs. 236, 237).

For the following reasons, the Court will **GRANT** the City's motion for summary
judgment (Doc. 140) and **GRANT** the Officers' motion for summary judgment (Doc. 206).

## I.    BACKGROUND

Plaintiff owned real property in Chattanooga, Tennessee, specifically, a motel. This action
arises from nuisance-abatement proceedings in Hamilton County Criminal Court against
Plaintiff's motel.

### A.    Investigation Leading to the Nuisance-Abatement Action

Plaintiff's motel was the site of frequent criminal activity. From October 2014 to
December 2017, 850 phone calls were made to 911 reporting incidents at the motel. Between 2012

and 2017, police officers for the Chattanooga Police Department (the "CPD") drafted 643 reports regarding criminal activity at the motel.

In June 2017, CPD superiors and the District Attorney's Office for Hamilton County (the "DA's Office") began investigating whether a public-nuisance action should be brought against Plaintiff's motel. The CPD superiors assigned Officer Novak to compile crime statistics regarding criminal activity at the motel. In addition, a CPD data analyst compiled a breakdown of the CPD's criminal reports regarding the motel and a log of the 911 calls reporting incidents at the motel.

The CPD sent all of the information regarding criminal activity at Plaintiff's motel to the DA's Office. District Attorney General Neal Pinkston reviewed it and determined the motel was a public nuisance under Tennessee Code Annotated § 29-3-101. He found "[t]he investigative findings revealed that on a daily basis, [Plaintiff's motel] was not only a threat to citizen safety but also to law enforcement officer safety when officers arrived for 911 calls" and "[t]he ongoing crime activity at this location could not continue to plague the City." (Doc. 214 ¶ 6.) Accordingly, Attorney General Pinkston decided a nuisance-abatement action should be brought against Plaintiff's motel and done *ex parte* pursuant to § 29-3-106(c), meaning that Plaintiff would not be given advance notice of the action. He assigned Assistant District Attorneys Andrew Coyle ("ADA Coyle") and Alan Dunn ("ADA Dunn") to do so.

ADA Coyle and ADA Dunn reviewed the information sent by CPD to the DA's Office and agreed with Attorney General Pinkston that the motel was a public nuisance under § 29-3-101. They did not, however, have any role in Attorney General Pinkston's decision to proceed *ex parte*, although they agreed doing so was appropriate "based on the severity and nature of the crimes continuing to be committed at the property in question and the health and safety hazards presented by this property to the public." (Doc. 209 ¶ 15; *see also* Doc. 211 ¶ 12.)

2

To proceed *ex parte* in nuisance-abatement actions, Tennessee law requires the moving party to provide an "affidavit that there is probable cause to believe that a public nuisance exists." *See* Tenn. Code Ann. § 29-3-106(c). To obtain such an affidavit, ADA Coyle and ADA Dunn contacted the Officers, as each had experience responding to 911 calls, observing criminal activity, and making arrests at Plaintiff's motel—Sergeant Massengale between 2004 and 2009, as well as March 2017 to January 2019, Investigator Noble between May 2015 and December 2017, and Officer Novak for three years between 2014 and 2018. The Officers had answered 911 calls at Plaintiff's motel at least every week, oftentimes every shift. When responding to these calls, the Officers had called backup for their safety, as the motel was a place of frequent crime. Even when not responding to a call at the motel, the Officers had often driven through the parking lot because of its regular criminal activity. The Officers had observed various types of crimes at Plaintiff's motel, including noise violations, public intoxication, domestic disputes, suspicious activity, prostitution, narcotics and overdoses, weapons violations, shots fired, various types of assaults, and theft and robbery. The Officers gave ADA Coyle and ADA Dunn statements regarding the criminal activity at Plaintiff's motel based on their experiences, and ADA Coyle and ADA Dunn converted those statements into affidavits.

On February 14, 2018, the Officers reviewed and signed their respective affidavits, which permitted the DA's Office to proceed *ex parte* in the public-nuisance action. They also reviewed the Verified Petition for Abatement of Nuisance (the "Verified Petition") drafted by the DA's Office, including its exhibits. The Officers signed verifications attesting to the truth of the petition and its exhibits.

### B.  Verified Petition & Restraining Order

On February 14, 2018, Attorney General Pinkston filed the Verified Petition in Hamilton County Criminal Court against Plaintiff's motel.  The Verified Petition stated that it "follow[ed] an investigation by the Chattanooga Police Department and District Attorney General's office," which showed the motel was "the site of a disproportionate amount of illegal activity."  (Doc. 2-3 at 3.)  Attached to the Verified Petition were the Officers' affidavits and two exhibits.  Exhibit A was a log of 911 calls reporting incidents at Plaintiff's motel between January 3, 2015, and October 25, 2016.  In error, ADA Coyle failed to attach a second call log, which detailed the 911 calls made regarding the motel from October 26, 2016, to January 28, 2018.  Exhibit B was a Crime Analysis Report, which provided an overview of criminal activity at various locations, including the motel, for the three years prior.

After filing the Verified Petition, Attorney General Pinkston and ADA Coyle presented it to the Honorable Tom Greenholtz of the Hamilton County Criminal Court at an *ex parte* hearing. The Officers were present at the hearing but did not testify.  Following the hearing, Judge Greenholtz issued a Temporary Injunction/Restraining Order (the "Restraining Order"), which found Plaintiff's motel constituted a public nuisance, and set a post-deprivation hearing for five days later.

Later that same day, February 14, 2018, the Hamilton County Sheriff's Department executed the Restraining Order and padlocked Plaintiff's motel.  Officer Novak and other CPD officers were on the scene to notify the motel's guests that they needed to leave.  Sergeant Massengale and Investigator Noble were not present.

## C. Post-Deprivation Hearing & Case's Dismissal

On February 19, 2018, a post-deprivation hearing was held in the nuisance-abatement action against Plaintiff's motel. At the hearing, the second call log, the one mistakenly not attached to the Verified Petition, was admitted as evidence, and Sergeant Massengale and Investigator Noble testified.

Judge Greenholtz again determined that Plaintiff's motel was a public nuisance under Tennessee law. He then issued an order with steps for Plaintiff to abate the nuisance. Plaintiff subsequently did so, so the court permitted the motel to reopen and dismissed the criminal case against it on February 22, 2018.

## D. Federal Court Proceedings

On December 20, 2018, Plaintiff filed this lawsuit against the Officers, the City, and Attorney General Pinkston,[1] asserting causes of action under 42 U.S.C. § 1983. (Doc. 2 ¶¶ 155–96.) Plaintiff claims the Officers and the City violated the Due Process Clause of the Fourteenth Amendment by seizing its real property without notice or a pre-deprivation hearing. (*Id.*)

The City and the Officers have moved for summary judgment. (Docs. 140, 206[2].) Plaintiff responded with an affidavit pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, contending additional discovery was necessary to respond to the motions. (Doc. 226.) However, the Court held the Rule 56(d) affidavit was insufficient and ordered Plaintiff to respond to the motions. (Doc. 231.) Plaintiff now has filed responses (Docs. 234, 235), and the City and the Officers have replied (Docs. 236, 237). These motions for summary judgment are ripe.

---

[1] Attorney General Pinkston has since been dismissed from the lawsuit. (Docs. 232, 233.)

[2] The Officers previously filed a motion for summary judgment (Doc. 146), but the Court denied it as moot, as the present motion supplanted it (Doc. 230).

5

## II.    **STANDARD OF REVIEW**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden to demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the Court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). The Court may not make credibility determinations or weigh the evidence in addressing a motion for summary judgment. *Id.* at 255.

If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.   DISCUSSION

The City's and the Officers' motions raise a threshold issue regarding standing. "Standing goes to a court's subject matter jurisdiction." *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013) (quoting *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007)). "Subject matter jurisdiction is always a threshold determination," so the Court first evaluates standing and, if Plaintiff has standing, then the other arguments raised in the motions. *See Am. Telecom Co., L.L.C. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007).

### A.   Standing

The City's and the Officers' challenges to Plaintiff's standing requires some additional background. At the time of the nuisance-abatement proceedings, Janice Hixson was the sole member of Plaintiff, a limited liability company ("LLC") under the laws of Tennessee. In an effort to reduce her loss following the motel's padlocking, Ms. Hixson assigned her membership interest in Plaintiff to 3210 Broad Street, LLC ("Broad Street"). However, two purported assignments have been produced in discovery. The first assignment is dated August 1, 2018, and assigns Ms. Hixson's interest in Plaintiff to Broad Street. (Doc. 221-1.) This assignment does not mention any rights regarding claims related to the nuisance-abatement action. (*See id.*) However, Ms. Hixson denies signing this assignment. (Doc. 221-3 at 3.) The second assignment is dated December 19, 2018, and again assigns Ms. Hixson's membership interest in Plaintiff to Broad Street. (Doc. 221-5 at 23–31.) Unlike the first assignment this assignment explicitly reserves to

7

Ms. Hixson the right to bring claims related to the nuisance-abatement action in Plaintiff's name. (*Id.*)  Plaintiff dissolved as an LLC on June 11, 2019.  (Doc. 221-6.)

The City argues Ms. Hixson retained a personal cause of action in the second assignment and therefore Plaintiff, as an entity, lacks standing.  (Doc. 141 at 3.)  However, the Court finds no merit in this argument, as the second assignment clearly states that Ms. Hixson retained the right to bring claims in Plaintiff's name, not her own.  (*See* Doc. 221-5.)

The Officers argue the first assignment governs and the second is invalid for lack of consideration.  (Doc. 221 at 20–23.)  But they also note Ms. Hixson disputes signing the first assignment.  (*Id.* at 21.)  Plaintiff asserts the second assignment reserved Ms. Hixson's right to bring this lawsuit, but Plaintiff does not respond to the Officers' consideration argument.  (Doc. 235 at 14–15.)  Put simply, the Officers and Plaintiff dispute which assignment is enforceable. However, this dispute is immaterial to the issue of standing.   Pursuant to Tennessee Code Annotated § 48-245-1201, Ms. Hixson has a statutory right to bring claims in Plaintiff's name after its dissolution as she is a former member of Plaintiff.

An LLC has the power to sue in its own name.[3]  Tenn. Code Ann. § 48-212-101(1).  An LLC does not automatically lose standing if it dissolves.  *Barrett v. Ocoee Land Holdings, LLC*, No. E2015-00242-COA-R3-CV, 2016 WL 297688, at *3 (Tenn. Ct. App. Jan. 25, 2016).  "After an LLC has been terminated, any of its former managers, governors, or members may assert or defend, in the name of the LLC, any claim by or against the LLC."   Tenn. Code Ann. § 48-245-1201.

---

[3] Tennessee law applies as Plaintiff was a Tennessee limited liability company (*see* Doc. 221-4).  *See* Tenn. Code. Ann. § 48-201-103 ("Chapters 201-248 of this title apply to every LLC for profit now existing or hereafter formed . . . .").

8

The question therefore is whether Ms. Hixson qualifies as a "former member" under § 48-245-1201. The Officers argue she does not, as she assigned her membership interest prior to Plaintiff's dissolution. (Doc. 221 at 22.) The Court disagrees with this narrow interpretation.

To interpret a statute, a court must "examine the text of the statute and, if the language used is unambiguous, . . . apply the plain meaning of the words used in the statute." *Garrison v. Bickford*, 377 S.W.3d 659, 663 (Tenn. 2012). In addition, "[e]very word in a statute is presumed to have meaning and purpose." *Id.*

Section 48-245-1201 applies to "any" of the former members of a terminated LLC. Tenn. Code Ann. § 48-245-1201 (emphasis added). This language is not only unambiguous, but also must be given purpose, which means the statute gives the right to sue in the LLC's name to any former member, regardless of membership status at the time of the LLC's dissolution.

In sum, regardless of which assignment applies, Ms. Hixson has a statutory right to bring this lawsuit in Plaintiff's name after its dissolution. Thus, Plaintiff has standing.

## B.    Summary Judgment Motions

The City's argument relies, in part, on the outcome of the Officers' motion, so the Court addresses the Officers' motion first.

### 1.    The Officers' Motion for Summary Judgment

The Officers move for summary judgment based on qualified immunity. (Doc. 206.) A plaintiff bears the burden to overcome an officer's qualified-immunity defense. *See Thompson v. City of Lebanon, Tenn.*, 831 F.3d 365, 369 (6th Cir. 2016). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). An officer is

9

entitled to qualified immunity "if (1) the officer[] did not violate any constitutional guarantees or (2) the guarantee, even if violated, was not 'clearly established' at the time of the alleged misconduct." *Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 992 (6th Cir. 2017).

The Court begins with the first prong. *See Pearson*, 555 U.S. at 236 (stating courts have discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

### a. Whether the Officers Violated Plaintiff's Procedural Due Process Rights

Plaintiff argues the Officers violated his procedural due process rights by failing to provide notice and a pre-deprivation hearing before the seizure of its motel. (Doc. 235 at 15–19.) The Due Process Clause of the Fourteenth Amendment guarantees that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. To a establish a procedural due process claim, a plaintiff must establish three elements:

> (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment . . . , (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest.

*Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002) (quoting *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999), *cert. denied*, 529 U.S. 1020 (2000)).

Generally, the state must provide "notice to the owner prior to the deprivation and an opportunity for a predeprivation hearing." *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). There are exceptions to this general rule, however, such as "where a government official reasonably believed that immediate action was necessary to eliminate an emergency situation and the government provided adequate post-deprivation process." *United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 486 (6th Cir. 2014).

The Court is not aware of any case law precisely addressing what actions make a state actor responsible for a procedural due process violation. Even so, it is clear that the alleged deprivation must be at the hands of the defendant. *See Thomas v. Cohen*, 304 F.3d 563, 569 (6th Cir. 2002) (stating "Plaintiffs must show that Defendants deprived them of a right protected by the Constitution"); *Cooper v. Parrish*, 203 F.3d 937, 952 (6th Cir. 2000) (dismissing claim when plaintiffs failed to show how the defendant's actions in a public-nuisance proceeding actually violated procedural due process); *Engler v. Arnold*, 209 F. Supp. 3d 988, 991 (N.D. Ohio 2016) (dismissing claims that did not show "that the deprivation was at the hands . . . of defendant"). Being at the hands of the defendant implies such violations come from the actions and decisions regarding the process to be given and the seizure of the protected interest. *See Doe v. Miami Univ.*, 882 F.3d 579, 599 (6th Cir. 2018) (emphasis added) (quoting *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976)) ("Procedural due process imposes constraints on *governmental decisions* which deprive individuals of liberty or property."). The Court therefore finds it appropriate to evaluate the actions taken here to determine whether the alleged procedural due process violation occurred at the Officers' hands.

First, there were decisions to file the nuisance-abatement action against Plaintiff's motel and to do so *ex parte*. *See, e.g.*, *Cohen*, 304 F.3d at 576–77 (quoting *Flatford v. City of Monroe*, 17 F.3d 162, 167 (6th Cir. 1994)) ("A prior hearing is not constitutionally required where there is a special need for very prompt action to secure an important public interest and where a government official is responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in a particular instance."). The decision to seek a nuisance-abatement action against Plaintiff's motel was made by Attorney General Pinkston. (Doc. 209 ¶ 14; Doc. 211 ¶ 13; Doc. 214 ¶ 4.) Likewise, the decision to proceed *ex parte* was

made by Attorney General Pinkston. (*Id.*; *see* Doc. 214 ¶ 7.) The Officers were "not involved in any way with the decision to seek an order padlocking [Plaintiff's motel] without prior notice to the owner." (Doc. 212 ¶ 13; Doc. 213 ¶ 12; Doc. 216 ¶ 19.) In fact, the Officers were not contacted until after Attorney General Pinkston had decided both to bring a nuisance-abatement action and to do so *ex parte*. (*See* Doc. 214 ¶ 4.) Plaintiff has not provided any evidence to suggest the Officers were involved in the decisions to bring the nuisance-abatement action or proceed *ex parte*.

Plaintiff argues the Officers' verifications violated its procedural due process rights. (Doc. 235 at 16.) This argument incorrectly assumes the verifications verified an exigency existed and therefore verified the constitutionality of *ex parte* action. However, the verifications attested to the truth of the factual allegations in the Verified Petition and its attachments, all of which focused on the investigation of Plaintiff's motel and whether there was probable cause to believe it was a public nuisance. Plaintiff presents no evidence that contradicts the truth of the Verified Petition's factual allegations.[4] Put simply, the Officers' verifications did not contribute to the *ex parte* action or issuance of the Restraining Order prior to notice and a predeprivation hearing.

However, the Officers' affidavits allowed the DA's Office to proceed *ex parte* in the nuisance-abatement action. *See* Tenn. Code Ann. § 29-3-106(c). Neither the Officers nor their verifications, however, affected the decision to proceed *ex parte* or the issuance of the Restraining Order. Plaintiff fails to explain how attesting to the truth of the information in the Verified Petition, the truth of which Plaintiff does not challenge, violated procedural due process. *See Cooper*, 203 F.3d at 952 ("The plaintiffs have failed to show how [the state actor's] decision to swear to the

---

[4] Plaintiff does challenge the 911 call log attached to the Verified Petition, contending it was insufficient to establish an exigency based on the age of the phone calls in it. (Doc. 235 at 6.) This challenge is immaterial—other information in the Verified Petition established recent criminal activity at the motel, including the Officers' affidavits and the Crime Analysis Report.

12

truth of the allegations in the civil forfeiture and public nuisance complaints deprived them of their . . . Fourteenth Amendment rights.").

Stated differently, the affidavits themselves did not violate Plaintiff's procedural due process rights, as they were only a cause in fact and not the proximate cause of the alleged violation. *See Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007) (stating a § 1983 claim requires that the defendant was "both the cause in fact and the proximate cause of" the constitutional violation). The affidavits were a cause in fact because the *ex parte* hearing and subsequent seizure "would not have occurred but for the conduct." *See id.* (quoting *Butler v. Dowd*, 979 F.2d 661, 669 (8th Cir. 1992)). But Plaintiff has failed to show how proximate causation, meaning how the Officers' affidavits made it "reasonably foreseeable" that procedural due process violations would result from them. *See id.* at 609.

Next, the *ex parte* hearing took place. *See Puckett v. Lexington-Fayette Urban Cnty. Gov't*, 833 F.3d 590, 606 (6th Cir. 2016) (quoting *Garcia v. Fed. Nat'l Mortg. Ass'n*, 782 F.3d 736, 740–41 (6th Cir. 2015)) (stating "[t]he point of procedural due process is to . . . 'prohibit the state from conducting unfair or arbitrary proceedings.'"). The DA's Office requested the *ex parte* hearing. (Doc. 209 ¶ 13; Doc. 211 ¶ 11.) At the hearing, Attorney General Pinkston and ADA Coyle presented the Verified Petition to Judge Greenholtz. (Doc. 221-12 at 4.) The Officers were present in the courtroom but did not testify. (Doc. 212 ¶ 17; Doc. 213 ¶ 14; Doc. 216 ¶ 17.) Judge Greenholtz determined the evidence was sufficient to show Plaintiff's motel was a public nuisance and issued the Restraining Order. (Doc. 2-3.) The Officers therefore had no part in this alleged failure to "afford [Plaintiff] adequate procedural rights prior to depriving [it] of [its] protected interest." *See Med. Corp.*, 296 F.3d at 409 (quoting *Hahn*, 190 F.3d at 716).

13

Following the *ex parte* hearing was the seizure of Plaintiff's motel. *See, e.g.*, *Flatford*, 17 F.3d 162 (considering procedural due process claims against officials who ordered and executed building's evacuation); *Cohen*, 304 F.3d at 577 (finding "officers 'unceremoniously dispossessed' Plaintiffs of their place of residence without affording them an opportunity to be heard at any type of predeprivation hearing"). The Hamilton County Sheriff's Office executed the Restraining Order and padlocked it. (Doc. 212 ¶ 18; Doc. 213 ¶ 14; 216 ¶ 18.) Officer Novak was at the motel when it was padlocked but only to "assist in notifying the residents of the padlocking order." (Doc. 216 ¶ 18.) An officer's "mere presence . . . without a showing of direct responsibility cannot subject them to liability." *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013). Plaintiff points to no evidence that suggests the Officers themselves participated in the deprivation of its property. Thus, the Officers did not participate in the seizure of Plaintiff's motel.

The next action was the post-deprivation hearing. Judge Greenholtz presided over this hearing. Sergeant Massengale and Investigator Noble testified at the hearing as witnesses. (Doc. 212 ¶ 18; Doc. 213 ¶ 14.) Like the *ex parte* hearing, the Officers were not involved in conducting the proceeding or deciding it was constitutionally adequate in light of the circumstances.

A review of the actions at issue here makes it evident that Plaintiff "has failed to show how" the Officers deprived it of procedural due process. *See Cooper*, 203 F.3d at 952. The Officers had no role in deciding what process was due, depriving Plaintiff of its property, or administering the process alleged to be insufficient. Put simply, the alleged violation of Plaintiff's procedural due process rights cannot be "at the hands" of the Officers when they took no actions and made no decisions that led to the alleged deprivation. *See Engler*, 209 F. Supp. 3d at 991.

14

### b. Whether Plaintiff's Constitutional Right Was Clearly Established

Plaintiff's claims against the Officers fails under the second prong of qualified immunity, as well. A right is "clearly established" where there is existing precedent that places "the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotations and citations omitted); *see also Ohio Civil Serv. Emps. Ass'n v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988) ("[T]o find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals, or itself."). The contours of the right "must be so well defined that it is 'clear to a reasonable officer that [the officer's] conduct was unlawful in the situation he confronted.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

Here, the question is whether a reasonable officer would have believed notice and a predeprivation hearing were required before seizing real property reasonably believed to be and later deemed a public nuisance. There is no evidence to suggest a reasonable officer confronting the same situation would have believed so. *See Wesby*, 138 S. Ct. at 590.

Of note, Plaintiff does not challenge the constitutionality of the statute under which Attorney General Pinkston sought and obtained *ex parte* relief, Tennessee Code Annotated 29-3-106(c). Pursuant to this statute, the Officers provided affidavits of their experiences to establish probable cause that Plaintiff's motel was a public nuisance. Plaintiff does not challenge the truth of these affidavits. In fact, Plaintiff does not argue its motel was not a public nuisance. Instead, Plaintiff essentially claims Attorney General Pinkston was incorrect in deciding an emergency situation existed such that proceeding *ex parte* was constitutionally permissible.

The cases on which Plaintiff relies do not establish that *ex parte* seizure of property deemed a public nuisance is not an emergency situation. *See United States v. James Daniel Good Real*

15

*Property*, 510 U.S. 43 (1993); *Cooper*, 203 F.3d 937. *Good Real Property* addressed "whether, in the absence of exigent circumstances, the Due Process Clause of the Fifth Amendment prohibits the Government in a civil forfeiture case from seizing real property without first affording the owner notice and an opportunity to be heard." 510 U.S. at 46. This case does not address whether a public nuisance is an exigent circumstance and, in addition, concerns civil forfeiture, while this case involves criminal seizure of property pursuant to a public-nuisance statute. Next, while *Cooper* involved the same public-nuisance statute at issue here, the case primarily addressed absolute and qualified immunity for the defendants' vouching for the truth of the allegations. 203 F.3d at 950–53. *Cooper* did not establish any precedent regarding whether a public nuisance under Tennessee law fell under the emergency-situation exception. Thus, Plaintiff identifies no case law that clearly establishes a public nuisance does not fall under the emergency-situation exception of procedural due process.

Even construing the evidence in the light most favorable to Plaintiff, the Officers have demonstrated they are entitled to qualified immunity and Plaintiff has not offered any evidence to demonstrate a reasonable jury would disagree. The Officers therefore are entitled to qualified immunity, and the Court will **GRANT** the Officers' motion for summary judgment (Doc. 206).

### 2. The City's Motion for Summary Judgment

The City moves for summary judgment on the lack of any illegal policy or custom.[5] (Docs. 140, 205.) "A governmental entity is liable under § 1983 only when the entity itself is a 'moving

---

[5] The City also moves for summary judgment on the lack of a constitutional violation. (Docs. 140, 205.) "There can be no *Monell* municipal liability under § 1983 unless there is an underlying unconstitutional act." *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). However, there may be circumstances in which an individual defendant is found not to be liable but a municipality nevertheless is. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 900 (6th Cir. 2018); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 365 (6th Cir. 1993). Neither the City nor Plaintiff addressed whether such circumstances

16

force' behind the deprivation[.]" *Ky. v. Graham*, 473 U.S. 159, 166 (1985). As a result, a plaintiff must show "the municipality had a 'policy or custom' that caused the violation of his rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). This can be accomplished by demonstrating: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess*, 735 F.3d at 478 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

Plaintiff relies on the third and fourth policy or custom under *Monell*. (Doc. 234 at 16–18.) The Court addresses each in turn.[6]

### a.    Failure to Train

An official policy or custom may be based on "a policy of inadequate training or supervision." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009) (quoting *Thomas*, 398 F.3d at 429). But "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Liability exists "only if its failure to train was 'closely related to' or 'actually caused' the plaintiff's injuries." *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) (quoting *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989)).

The City argues its failure to train the Officers in nuisance-abatement actions did not cause the alleged violation, as the Officers had no role in the decision to proceed *ex parte*. (Doc. 141 at

---

exist in this case, so the Court will not evaluate the City's motion on this basis.

[6] In support of its motion, the City relies on the deposition excerpts provided in support of the Officers' motion for summary judgment. (Doc. 205 at 3.)

17

5; Doc. 236 at 2.) Plaintiff responds that it is undisputed that the City did not train its Officers regarding nuisance abatement. (Doc. 234 at 16–17.)

The Court already has considered the Officers' roles in the nuisance-abatement action against Plaintiff's motel. *See supra* III.B.2.a. The evidence shows they had no say in deciding to proceed *ex parte*, conducting the *ex parte* or post-deprivation hearing, or depriving Plaintiff of its property. As a result, the City's failure to train the Officers could not have affected the allegedly deficient process provided to Plaintiff. *See Monell*, 436 U.S. at 694; *Hill*, 884 F.2d at 275. Stated differently, if the Officers had no role in the alleged constitutional violation arising from the nuisance-abatement action, the failure to train them in nuisance-abatement actions would not avoid this or future rights violations.

Contrary to Plaintiff's argument (*see* Doc. 234 at 16–17), *City of Canton v. Harris*, 489 U.S. 378 (1989), and *Shadrick v. Hopkins County*, 805 F.3d 724 (6th Cir. 2015), do not change the outcome. *See City of Canton*, 489 U.S. at 391 (defining dispositive question as "[w]ould the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?"); *Shadrick*, 850 F.3d at 738 (acknowledging the plaintiff's burden to show "the inadequacy [of the training] actually caused, or is closely related to, [the plaintiff's] injury"). While it is undisputed that the City failed to train the Officers on nuisance-abatement actions (Doc. 234-1 at 4 (9:18–21); Doc. 234-2 at 4 (10:18–20); Doc. 234-3 at 39:1–4)), the City has pointed to evidence that demonstrates its failure to train did not cause Plaintiff's alleged injury, and Plaintiff has not noted any evidence suggesting otherwise.[7] Thus, the City is entitled to summary judgment on Plaintiff's failure-to-train *Monell* claim.

_____

[7] The Court need not address Plaintiff's argument that the City is liable based on "a single violation of federal rights, accompanied by a showing" of its failure to train. (Doc. 234 at 14 (quoting *Shadrick*, 850 F.3d at 738–39).) While Plaintiff's statement of law is correct, Plaintiff

18

### b. Custom of Tolerance and Acquiescence

An official policy or custom under *Monell* also can be established by "a custom of tolerance or acquiescence of federal rights violations." *Spears*, 589 F.3d at 256 (quoting *Thomas*, 398 F.3d at 429). "[A] custom-of-tolerance claim requires a showing that there was a pattern of" similar constitutional violations. *Burgess*, 735 F.3d at 478. And the City is liable only if Plaintiff "can demonstrate that his civil rights have been violated as a direct result of" the City's custom of tolerance or acquiescence. *See Burley*, 729 F.3d at 618–19 (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004)).

"The question here is whether there was some sort of policy, custom, or practice in the Chattanooga Police Department of" having officers verify nuisance-abatement petitions in the absence of exigent circumstances. *See Thomas*, 398 F.3d at 508. "[S]uch a policy must be shown by a clear and persistent pattern." *Id.* The City asserts Plaintiff has failed to demonstrate such a pattern, as it cannot identify any illegal policy. (Doc. 141 at 6.) Plaintiff responds a pattern is evident not only based on the nuisance-abatement petition against it, but also against another business, Westside Grocery. (Doc. 234 at 17–18.) In May 2017, Attorney General Pinkston filed an abatement-of-nuisance action against Westside Grocery, proceed *ex parte* under Tennessee Code Annotated § 29-3-106(c), and Judge Greenholtz issued a temporary restraining order against it. (Doc. 2-11.)

Plaintiff has "failed to show several separate instances of the alleged rights violation." *See Thomas*, 398 F.3d at 434. Plaintiff argues the nuisance-abatement petition against Westside Grocery was obtained *ex parte* in the absence of exigent circumstances. (Doc. 234 at 18 (citing

---

still must establish the City actually caused the violation, which Plaintiff has failed to do. *See Shadrick*, 850 F.3d at 738.

19

Docs. 2-10, 2-11).)  Plaintiff relies on two documents in support of its argument that the Westside Grocery nuisance proceedings were unconstitutional, an article regarding an initiative started by Attorney General Pinkston to address gang-related violence (Doc. 2-10) and an article regarding Westside Grocery's padlocking as well as the verified petition and restraining order from the nuisance-abatement action against Westside Grocery (Doc. 2-11).   These documents, however, do not show, or even suggest, a lack of exigent circumstances as to Westside Grocery.  Instead, the documents simply reflect that Judge Greenholtz determined Westside Grocery qualified as a public nuisance under Tennessee law.  Even viewing the evidence in the light most favorable to Plaintiff, it "is not entitled to a trial on the basis of mere allegations."  *See Smith*, 2009 WL 3762961, at *2–3.  As Plaintiff has provided no evidence of a clear pattern of an illegal policy of tolerance, its custom-of-tolerance claim must fail.  Thus, the City is entitled to summary judgment on Plaintiff's custom-of-tolerance *Monell* claim.

In sum, the Court finds the City has presented evidence to show there is no genuine factual dispute as to both of Plaintiff's *Monell* claims, and Plaintiff has failed to come forward with specific evidence to show otherwise.  Thus, the Court will **GRANT** the City's motion for summary judgment (Doc. 140).

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court will **GRANT** the City's motion for summary judgment (Doc. 140) and will **GRANT** the Officers' motion for summary judgment (Doc. 206).  As Plaintiff has no claims remaining, the Court will **DISMISS** this action **WITH PREJUDICE**.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**